### LOISEL, U. S. Marshal, v. MORTIMER.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1922.)

No. 3794.

1. **Clerks of courts ⊜⇒62—Statutory remedy for suit against clerk of court to determine delinquency in account held not an adequate remedy, precluding suit to enjoin marshal from withholding salary.**

Rev. St. 1766 (Comp. St. § 3239), providing that no money shall be paid to any person who is in arrears to the United States, and that accounting officer, if required to do so by the party whose salary is withheld, shall forthwith report the balance due to Solicitor of the Treasury, who shall within 60 days thereafter order suit to be commenced against such delinquent and his sureties, does not provide such a complete and adequate remedy at law as to preclude suit by clerk of Circuit Court of Appeals, whose expense account was approved by senior judge, to compel a United State marshal to pay over amount withheld from clerk's salary on order of Comptroller, which order was based on fact that clerk had charged in his account expenses for transporting records at $10 a day, as authorized, when approved and allowed by senior judge, by Sp. Act June 30, 1902, Sp. Act Dec. 18, 1902, and Sp. Act Jan. 30, 1903, and Comptroller claimed that acts had been impliedly repealed by Act July 19, 1919, providing for expenses not to exceed $5 per day.

2. **United States ⊜⇒125—Suit against United States marshal not suit against United States.**

Suit for mandatory injunction to compel United States marshal to pay over to clerk of Circuit Court of Appeals for Fifth Circuit money withheld from clerk's salary on order of Comptroller of the Treasury is not a suit against the United States, where the order was based on the ground that amount withheld was to cover excessive expenses; the whole controversy involving the implied repeal of provisions contained in special acts under which the clerk made the charge, by provision of later act.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Injunction ⊜74—That officer must construe act does not affect ministerial character of duty.**

For the purpose of issuing an injunction against an officer of the United States, that the officer must construe an act of Congress in ascertaining his duty does not render it other than ministerial.

4. **Injunction ⊜5—Performance of duty compelled.**

An injunction may compel the performance of a duty.

5. **Injunction ⊜5—Mandatory injunction may be granted.**

Where the remedy by mandamus is not as available as relief in equity, a mandatory injunction will be granted.

6. **Clerks of courts ⊜40—Special acts relating to fees for transporting records from official residence held not repealed.**

Act July 19, 1919, making appropriation for sundry civil expenses, and containing a provision that only actual expenses of travel and expenses of lodging and subsistence, not to exceed $5 per day, shall be allowed clerks of the United States Circuit Court of Appeals, when absent from his official residence on official business, could apply to various acts not containing any provision for fees of such clerks when absent from official residence, and such act does not repeal the common provision of Sp. Act June 30, 1902, Sp. Act Dec. 18, 1902, and Sp. Act Jan. 30, 1903, relating to holding of terms of Circuit Court of Appeals at Atlanta, Fort Worth, and Montgomery, which common provision provided that the clerk could pay out of the fees and emoluments of his office necessary expenses incurred by him in transporting records from his official residence to the named places for holding court, and expenses of travel and subsistence, not to exceed $10 a day.

7. **Statutes ⊜162—Repeals by implication not favored, and special act construed as exception to general act.**

Repeals by implication are not favored, and even where the words of the general act embrace a special act, no repeal will be implied, but the special act will be construed to be an exception to the general act, unless it is absolutely necessary to so construe it in order to give its words any meaning at all.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by Frank H. Mortimer against Victor Loisel, United States Marshal. From an order granting a preliminary injunction, defendant appeals. Affirmed.

Louis H. Burns, U. S. Atty., of New Orleans, La., for appellant.

George Janvier and William C. Dufour, both of New Orleans, La., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Frank H. Mortimer, the clerk of the United States Circuit Court of Appeals, for the Fifth Circuit, filed his bill of complaint in the United States District Court for the Eastern District of Louisiana against Victor Loisel, the United States marshal for said district to restrain him from carrying out an order of the Comptroller of the Treasury of the United States directing said marshal to withhold from the salary of said Mortimer the sum of $380 until said Mortimer should pay to the credit of the treasury of the

United States the sum of $380, charged in his account for the fiscal year ending June 30, 1920.

Said sum was charged by said clerk in his said account for actual expenses, not exceeding $10 per day, to cover travel and subsistence, for 38 days' attendance on the sessions of said Circuit Court of Appeals at Atlanta, Ga., Montgomery, Ala., and Fort Worth, Tex., during said fiscal year. Said charges had been duly approved and allowed by the senior Circuit Judge of the Fifth judicial circuit, and were paid by said clerk out of the fees and emoluments of his office for said fiscal year; such approval, allowance, and payment from said fees and emoluments being as directed in three separate acts of Congress (Comp. St. § 1118) providing, respectively, for the holding of said terms of said United States Circuit Court of Appeals at each place, to wit, at Atlanta (Act June 30, 1902, 32 Stat. 548), at Fort Worth (Act Dec. 18, 1902, 32 Stat. 756),. and at Montgomery (Act Jan. 30, 1903, 32 Stat. 784). The fifth section of each act reads:

"That the clerk of said court is authorized and permitted to pay out of the fees and emoluments of his office (1) the necessary expenses incurred by him in transporting from his office in New Orleans, Louisiana, to * * * and in transporting from [Atlanta—Fort Worth—Montgomery] the records, books, papers, files, dockets, and supplies, necessary for the use of the court at its terms to be held in [said places]; (2) an allowance for actual expenses not exceeding ten dollars per day, to cover travel and subsistence, for each. day he may be required to be present at [said places] on business connected with his said office, such expenses and allowance to be *approved and allowed* by the senior Circuit Judge of the Fifth judicial circuit." (Italics ours.)

This item of the account of said clerk was disallowed by the Auditor of the State and other departments on the ground that "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30th, 1920, and for other purposes" (41 Stat. 163, 210), approved July 19, 1919, repealed so much of these special acts as provided for paying the expenses of travel and subsistence of the clerk. The general Appropriation Act read:

"For fees of clerks, $18,000: Provided, that after July 1, 1919, only actual expenses of travel and expenses of lodging and subsistence, not to exceed $5 per day, shall be allowed any clerk of a United States circuit court of appeals when absent from his official residence on official business."

The clerk appealed from the Auditor's decision to the Comptroller of the Treasury, who approved and amended said disallowance, and on March 10, 1921, directed the clerk to deposit said sum of $380 to the credit of the treasury of the United States. The clerk declined to make such deposit, but advised said officials that he was ready to accept service of process, and aid in expediting an early determination of any suit which the government might file. He based his refusal to make said payment on the following clause in the instructions of the Attorney General of the United States to court officials, dated June 1, 1916 (section 1680):

"If items disallowed have been repaid and deposited and the Auditor has balanced and closed the account, revision of such items cannot be obtained, there being no outstanding difference."

On September 1, 1921, said clerk was notified by the defendant marshal that, as he had instructions from the Comptroller that no credit would be given in settlement of the marshal's accounts for any payment of compensation to said clerk until said alleged indebtedness was paid, he would withhold $380 from said clerk's salary. Authority for this action of the marshal, on demand of the Comptroller, is claimed under Revised Statutes of the United States, § 1766 (U. S. Comp. St. § 3239), which reads:

"No money shall be paid to any person for his compensation who is in arrears to the United States, until he has accounted for and paid into the treasury all sums for which he may be liable. In all cases where the pay or salary of any person is withheld in pursuance of this section, the accounting officers of the treasury, if required to do so by the party, his agent or attorney, shall report forthwith to the Solicitor of the Treasury the balance due; and the Solicitor shall, within sixty days thereafter, order suit to be commenced against such delinquent and his sureties."

Upon the hearing in the District Court the grant of a preliminary injunction was resisted on the sole ground that there was no equity in the bill, and that complainant's only remedy was to proceed under said section 1766 of the Revised Statutes. The court granted a temporary injunction. The defendant has appealed to this court and raises the same question.

Appellant's counsel admits that on this appeal the facts alleged in the bill are to be taken as true. He contends: (1) That Revised Statutes, § 1766, provides the only remedy for the clerk. That this suit is in effect a suit against the United States, and that it has not consened to be sued. (2) That said section of the Revised Statutes provides a complete legal remedy. (3) That the bill should be dismissed, as being without equity.

[1, 2] The first and second points can be discussed together. It is quite evident that section 1766, Revised Statutes, gives to the clerk no right to sue at law. It provides a right in him to require a report to be made to the Solicitor of the Treasury of the balance claimed to be due by him, and directs that officer within 60 days to *order* a suit to be brought "against said delinquent and his sureties." This is not a plain, adequate, and complete remedy at law given to the plaintiff.

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances." Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 596 (32 L. Ed. 1005); Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 12, 19 Sup. Ct. 77, 43 L. Ed. 341.

This is not a suit against the United States. It is a suit to restrain the United States marshal from refusing to perform a plain ministerial duty. He is required by law to pay to the clerk of the Circuit Court of Appeals his salary at the times fixed by law. The appropriation has been made by Congress of a specific sum to pay this salary, which was subject to the marshal's order for this purpose. The money has been appropriated, and will be paid on the order of the marshal, unless in obedience to the demand of the Comptroller he withholds the same.

If, therefore, there is no legal obligation resting on said marshal to · withhold said payment, his refusal would be the unlawful act of an official in refusing to pay to another moneys which the United States had appropriated and placed under his control for that purpose, and his conduct could be restrained, or compelled, by the courts. The suit would not be one against the United States. Payne, etc., v. Central Pac. Ry. Co., 255 U. S. 228, 238, 41 Sup. Ct. 314, 65 L. Ed. ——; Lane v. Watts, 234 U. S. 525, 540, 34 Sup. Ct. 965, 58 L. Ed. 1440; Noble v. Union River Logging Railroad, 147 U. S. 165, 176, 13 Sup. Ct. 271, 37 L. Ed. 123.

[3] That the officer must construe an act of Congress in ascertaining his duty does not render it other than ministerial. Roberts v. United States, 176 U. S. 221, 230, 20 Sup. Ct. 376, 44 L. Ed. 443; Smith v. Jackson, 246 U. S. 388, 38 Sup. Ct. 353, 62 L. Ed. 788.

[4] An injunction may compel the performance of a duty. Stevens v. Ohio State Tel. Co. (D. C.) 240 Fed. 759, 766, 769; In re Lennon, 166 U. S. 548, 556, 17 Sup. Ct. 658, 41 L. Ed. 1110.

[5] Where the remedy by mandamus is not as available as relief in equity, a mandatory injunction will be granted. Bourke v. Alcott Water Co., 84 Vt. 121, 78 Atl. 715, 33 L. R. A. (N. S.) 1015, Ann. Cas. 1912D, 108. Here the withholding of this salary is due to a difference of opinion as to what is now the law in force. The items of account, because of which it has been withheld, have been allowed and approved by the senior Circuit Judge. It is not contended that they were not expended.

But it is insisted that, instead of the sum of $10 per day being allowed for actual expenses, covering travel and subsistence, the amount of actual traveling expenses, and not exceeding $5 per day for lodging and subsistence, should have been charged. On this difference the marshal is instructed to withhold the salary for the entire charge, pending a payment of the entire sum of the charge.

In the light of the language of section 1766 of the Revised Statutes, it is doubtful if it is intended to apply to a case like the present. Where such retention of compensation is directed, the party whose salary is withheld, if he requires suit to be ordered, is termed "the delinquent." This is hardly a description appropriate to an official who has received the approval and allowance of a credit made in his accounts, and whose charge is challenged solely on the ground that the statutes under which he claims have been modified by implication by another statute which does not refer to them.

[6] But if Revised Statutes, § 1766, can be considered as applicable to a case like the one under consideration, we think that the account of the clerk was correct, and that the provision quoted from the Sundry Civil Appropriation Act was not the law applicable to the same. The acts requiring the holding of the terms of court at Atlanta, Fort Worth, and Montgomery are special acts, each pertaining alone to the holding of said terms of court at said respective places. The attention of Congress in enacting them was particularly and solely directed to the subject of these terms of this court, and to the expenses to be incurred and paid in holding the same.

Each of these acts provides as to these terms for the payment of said expenses in a particular way; i. e., out of the fees and emoluments of the office of the clerk. Each provides for various expenses, to wit, the expenses of transporting to and from each place the records, files, dockets, and supplies necessary for the use of the court, and also the actual expenses of the clerk, not to exceed $10 per day to cover both travel and subsistence. It provides that the expenses and allowance shall be approved and allowed by the senior Circuit Judge of said Fifth circuit.

In 1919, an act which contains no reference to these special acts, which contains no words of repeal of any act, makes an appropriation for the fiscal year beginning July 1, 1919:

"For fees of clerks, $18,000: Provided, that after July 1, 1919, only actual expenses of travel and expenses of lodging and subsistence, not to exceed $5 per day, shall be allowed any clerk of a United States Circuit Court of Appeals when absent from his official residence on official business."

We do not think that this act can be taken to repeal the special acts providing for certain expenses of the terms of the Circuit Court of Appeals of the Fifth Circuit to be held at Atlanta, Fort Worth, and Montgomery, and for travel and subsistence of the clerk in attendance thereon. The act is certainly not intended to entirely supplant these special acts, as it makes no allusion whatever to the provision for paying a part of the expenses embraced in the fifth section of these special acts; that is, the cost of transporting records, dockets, etc.

[7] This act contains no repealing clause of any sort, and hence only a repeal by necessary implication is insisted on. Repeals by implication are not favored. United States v. Healy, 160 U. S. 136, 146, 16 Sup. Ct. 247, 40 L. Ed. 369; United States v. Greathouse, 166 U. S. 601, 605, 17 Sup. Ct. 701, 41 L. Ed. 1130. Even where a repeal would be implied as between general acts, such repeal of special acts by a general act will not be implied. There, even where the words of the general act embrace the special act, no repeal will be implied, but the special act will be construed to be an exception to the general act, unless it is absolutely necessary to so construe it in order to give its words any meaning at all. Black on Interpretation of Laws, 116; Petri v. F. E. Creelman Lumber Co., 199 U. S. 487, 497, 26 Sup. Ct. 133, 50 L. Ed. 281.

"It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special." Rodgers v. United States, 185 U. S. 83, 87, 22 Sup. Ct. 582, 583 (46 L. Ed. 816).

As was said in a later case:

"First, such [implied] repeals are not favored, and usually occur only where there is such an irreconcilable conflict between an earlier and a later statute

that effect reasonably cannot be given to both (United States v. Healy, 160 U. S. 136, 146; United States v. Greathouse, 166 U. S. 601, 605); second, where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general. (Townsend v. Little, 109 U. S. 504, 512; Ex parte Crow Dog, Id. 556, 570; Rodgers v. United States, 185 U. S. 83, 87–89)." Washington v. Miller, 235 U. S. 422, 428, 35 Sup. Ct. 119, 122 (59 L. Ed. 295).

At the time these special acts were passed there were other United States Circuit Courts of Appeal which were required to meet at more than one place. Since their passage an act has been adopted requiring a term of the United States Circuit Court of Appeals to meet at Asheville, N. C. In none of these acts is any provision made for the payment of expenses; but they are to be paid under the general law requiring the clerk to report his fees to the Attorney General, with expenses deducted as therein provided. The act requiring terms to be held at Denver or Cheyenne and St. Paul in the Eighth circuit was approved on June 9, 1902, just 21 days before the act providing for the term at Atlanta, Ga. (Comp. St. § 1118). The first act contains no provision regarding expenses; the second act, the special provisions above quoted.

Congress, therefore, clearly considered the situation, regarding expenses of holding these terms at Atlanta, Fort Worth, and Montgomery as not properly provided for under the general law, and made the special provisions contained in the three special acts regulating the holding of these terms at these points. There was, therefore, a general act providing that the clerk shall make a report of fees annually to the Attorney General, together with necessary office expenses for such year, which "shall be certified by the senior Circuit Judge of the proper circuit, and audited and allowed by the proper accounting officers of the Treasury Department" (Act of June 6, 1900, 31 Stat. 639, U. S. Comp. St. § 1400), while in 1902 and 1903 these special acts were passed providing for the expenses of holding terms of the United States Circuit Court of Appeals at three designated places. These acts provide that from the clerk's fees and emoluments shall be paid the cost of transporting records, etc., necessary for the use of the court, "and an allowance for actual expenses not exceeding ten dollars per day to cover travel and subsistence, * .* * such expenses and allowance to be approved and allowed by the senior Circuit Judge of the Fifth judicial circuit."

The case of United States v. Nix, 189 U. S. 199, 23 Sup. Ct. 495, 47 L. Ed. 775, presented a similar question. There a special act applicable to the territory of Oklahoma provided that a marshal should take all persons arrested before the committing officer nearest to the place where the offense was committed. In a subsequent general act of Congress, making sundry civil appropriations, it was provided that the marshal, his deputy, or other officer, arresting a person, should take him before the nearest officer having jurisdiction to commit or take bail, "and no mileage shall be allowed any officer violating the provisions hereof." 28 Stat. 372, 416 [Comp. St. § 1678]). The marshal

presented an account for mileage, approved by the court, which was disallowed by the accounting officers of the Treasury Department, on the ground that the special act applicable to Oklahoma Territory was repealed by the above provision of the Sundry Civil Appropriation Act. The Court of Claims approved this ruling. The Supreme Court, in reversing the Court of Claims, said:

"Inasmuch as the later act is a general one, applicable to marshals generally throughout the country, we do not think it was intended to repeal or interfere with the former act, providing specially for persons charged with any offense or crime in the territory of Oklahoma, and that in all cases, whether the crime was committed against the Territory or the general government, the accused shall be taken before a commissioner, whose office is nearest to the place where the offense or crime was committed. The rule of statutory construction is well settled that a general act is not to be construed as applying to cases covered by a prior special act upon the same subject. On this principle we held in Townsend v. Little, 109 U. S. 504, that special and general statutory provisions may subsist together, the former qualifying the latter. See also Churchill v. Crease, 5 Bing. 177; Magone v. King, 51 Fed. Rep. 525, and cases cited; State v. Clarke, 25 N. J. Law. 54." United States v. Nix, 189 U. S. 199, 204, 23 Sup. Ct. 495, 498 (47 L. Ed. 775).

The provision in the Sundry Civil Appropriation Act passed in 1919, appropriating $18,000 for fees of clerks, and providing that after July 1, 1919, only actual expenses of travel "and expenses of lodging and subsistence not to exceed $5 per day shall be allowed any clerk of a United States Circuit Court of Appeals when absent from his official residence on official business," which contains no reference to these special acts and no repealing clause, applies to cases covered by the general law, and does not repeal these special acts.

We do not think any error was committed in the grant of the interlocutory injunction, and the order granting the same is affirmed