TORRES, PETICIONARIO Y APELADO, *v.* CAPESTANI, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama en procedimiento de *mandamus.*

No. 2566.—Resuelto en junio 9, 1922.

*Mandamus*—CAUSA DE ACCIÓN.—Aduce hechos suficientes una petición de *mandamus* dirigida contra el funcionario municipal encargado de la venta de fluído eléctrico perteneciente al municipio, cuando de ella aparece que el peticionario ha cumplido con todos los requisitos que son exigidos por el municipio a los consumidores y no resulta de ella que existe motivo para que no se le suministre al peticionario.

*Mandamus* CONTRA FUNCIONARIOS MUNICIPALES—PARTES INTERESADAS.—El recurso de *mandamus,* atendido el artículo 65 de la Ley Municipal, es procedente para que un consumidor pueda obtener el suministro de fluído eléctrico que sin razón legal le niega el funcionario municipal encargado de la venta del mismo; y cuando el peticionario ha firmado el contrato como tal consumidor él es la verdadera parte interesada aunque no sea dueño del edificio al cual deba suministrarse el fluído eléctrico.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. C. Domínguez Rubio.*

Abogado del apelado: *Sr. M. A. Martínez.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

Miguel Angel Torres presentó el 13 de julio de 1921 en la Corte de Distrito de Guayama una petición de *mandamus* contra Rogelio Capestani, Comisionado de Obras Públicas Municipal de dicho municipio, alegando sustancialmente que es dueño de una empresa cinematográfica que funciona en el teatro "Bernardini" de dicha ciudad; que el demandado

es el Comisionado de Obras Públicas de Guayama y como tal y de acuerdo con una ordenanza regulando la venta de fluído del sistema eléctrico municipal de la ciudad de Guayama, aprobada por su Asamblea Municipal, tiene bajo su administración y dirección dicho sistema eléctrico que opera y administra para utilidad pública mediante franquicia que tiene concedida el municipio; que el peticionario es un consumidor de ese fluído eléctrico para el alumbrado del teatro y para el funcionamiento de un aparato cinematográfico en el mismo; que ese teatro hace más de cuatro años que consume corriente eléctrica del municipio, teniendo una instalación eléctrica que viene funcionando regularmente; que el día primero de julio de 1921, sin estar vencidos los diez días que tenía para pagar el consumo del mes anterior, según la ordenanza citada, el demandado por medio de sus empleados y sin previo aviso cortó la corriente eléctrica para el alumbrado de la empresa del peticionario; que al día siguiente se le informó en el municipio que la causa de ese hecho era por haber vencido el contrato el 30 de junio anterior y habiendo mostrado sus deseos de celebrar un nuevo contrato fué inmediatamente tramitado y firmado por el peticionario y los empleados municipales correspondientes, habiendo llenado el peticionario todos los requisitos que exige la ordenanza y prestado la fianza que le fué exigida para que se le conectara la corriente; que después de haber firmado el contrato como consumidor y de ser aceptado por los funcionarios correspondientes requirió al demandado, como Comisionado de Obras Públicas Municipal, para que le suministrase la corriente eléctrica pero se la ha negado sin motivo justificado; que todas las noches celebraba exhibiciones cinematográficas en dicho teatro, siendo su único negocio; que por el acto del demandado está impedido de dichas exhibiciones y ha tenido perjuicios por la cantidad que especifica, y que una vez firmado su contrato el demandado estaba obligado a suministrarle la corriente, lo que'

estaba y está dentro de sus funciones y poderes. Por todo lo expuesto pidió a la corte que dictase un auto perentorio ordenando al demandado que le suministrase la corriente eléctrica y que le pagase cierta cantidad por los perjuicios que ha sufrido.

Se opuso el demandado a la petición de *mandamus* alegando fundamentalmente que no aduce hechos suficientes determinantes de causa de acción y que no está obligado a suministrar la corriente eléctrica al peticionario porque la instalación del teatro ''Bernardini'' es deficiente y peligrosa para el público, pero practicadas las pruebas en las que el peticionario ninguna presentó referente a los perjuicios que alegó, recayó sentencia contra el demandado ordenándole perentoriamente que suministre la corriente eléctrica al peticionario y contra ella se interpuso por el demandado este recurso de apelación.

Los tres principales motivos de error alegados por el apelante se refieren a la insuficiencia de los hechos expuestos en la petición para determinar una causa de acción y el último a la insuficiencia de la prueba para sostener la sentencia dictada, y son los que consideraremos, pues aunque se alegan otros dos sosteniendo que la petición es ambigua y que debieran ser eliminados ciertos particulares de ella, no tienen importancia después de practicadas las pruebas, aparte de que no son procedentes.

La petición era suficiente porque alegándose en ella que el municipio de Guayama tiene una franquicia para un sistema eléctrico, que vende corriente eléctrica al público mediante contrato, que el demandado es el encargado de dicho servicio, que el peticionario celebró un contrato para que se le suministrase corriente siendo firmado por él y por los Comisionados de Obras Públicas Municipal y de Hacienda, que prestó la fianza que le fué exigida, que esos son todos los requisitos que se le exigen por una ordenanza del municipio para que le sea suministrada la corriente y que el teatro

donde ha de usarse tiene una instalación eléctrica que viene funcionando regularmente desde cuatro años antes, siendo ciertos esos hechos no hay duda de que el peticionario tenía derecho a que se le suministrara la corriente eléctrica y que su petición aduce hechos determinantes de causa de acción, pues de ella aparece que ha cumplido todos los requisitos que son exigidos por el municipio para tener derecho al uso de la corriente eléctrica, y no resulta de ella que haya alguna razón especial para que no se le facilite.

Se sostiene, además, por el apelante, que no procede la petición de *mandamus* porque Torres tiene un recurso ordinario contra el municipio como corporación pero el artículo 65 de la Ley Municipal vigente concede el auto de *mandamus* para compeler a los funcionarios municipales al cumplimiento de sus deberes y, según la petición, el demandado por ser el Comisionado de Obras Públicas Municipal del municipio de Guayama tiene la dirección del servicio eléctrico del municipio. En cuanto a que Torres no es la verdadera parte interesada por pertenecer el teatro a otra persona, nos bastará decir que sí lo es porque fué quien firmó el contrato como consumidor y porque es el perjudicado por no suministrársele la corriente.

Veamos ahora la prueba. De ella resulta lo siguiente: que el municipio de Guayama tiene una franquicia para la explotación de una planta eléctrica y vende corriente eléctrica al público, servicio éste que está bajo la dirección de su Comisionado de Obras Públicas y regulado por la ordenanza de 7 de junio de 1920. Durante unos cuatro años se utilizó esa corriente en el teatro "Bernardini" de dicha ciudad hasta el primero de julio de 1921 en que por orden del Comisionado de Obras Públicas fué suprimida la corriente a ese teatro a las seis de la tarde, quedando así privado Miguel Angel Torres de continuar su negocio de dar funciones de cinematógrafo por las noches, como venía haciendo desde unos dos meses antes en que se hizo cargo de igual

negocio que tenía en el teatro la sociedad Rivera, Vives Torres y Compañía. Al día siguiente Miguel Angel Torres acudió al municipio para saber la causa por la que se le había cortado la corriente y al comunicársele que el contrato había vencido el 30 de junio anterior pidió que se le entregara un contrato impreso para firmarlo, como lo hizo con el que le fué entregado, contrato que tambíén firmaron los Comisionados de Obras Públicas y de Hacienda, y habiendo constituído la fianza que se le exigió, pidió que se le suministrara la corriente, sin que en la fecha de la petición y del juicio le hubiera sido conectada.

Dispone la sección 10 *a* de la ordenanza citada que toda persona que desee obtener servicio eléctrico hará una solicitud para este objeto dirigida al Comisionado de Obras Públicas Municipal, la que después de tramitada y aprobada por los funcionarios respectivos en la forma prevista en la misma, servirá de contrato entre el municipio y el peticionario, contrato que será aprobado por los Comisionados de Obras Públicas y de Hacienda y que estará en vigor hasta el día 30 de junio de cada año, pudiendo ser rescindido antes de esa fecha a petición del consumidor; y como en este caso el contrato impreso fué firmado por Torres y por dichos dos comisionados y como el consumidor prestó la fianza que requiere otra sección de la ordenanza, cumplidos así todos los requisitos exigidos tenía derecho Torres a que se le suministrara la corriente eléctrica si no había alguna razón especial para negarla. Algo se dice en la prueba del demandado sobre si el contrato firmado debió ser otro, pero esto no se alegó como defensa en la contestación y como aparece del contrato que se hizo para dar corriente eléctrica al teatro "Bernardini" y como el contrato impreso fué suministrado por el encargado de ellos, no puede imputarse al peticionario que no firmara el contrato correspondiente, si es que así sucedió, lo que no fué probado.

Pero la verdadera contienda entre las partes ha sido si

la instalación eléctrica que tiene el teatro "Bernardini" es deficiente y peligrosa y que por esta razón no se le puede suministrar la corriente, cuestión sobre la que versó principalmente la prueba, porque la sección 32 de la ordenanza reserva al municipio el derecho de suspender el servicio sin previo aviso, entre otras causas, por peligro inminente en la instalación de cualquier consumidor.

El peticionario declaró que tal instalación se viene usando con corriente del municipio desde hace unos cuatro años. Su testigo Charles Mock, jefe de la planta eléctrica que da luz a Guayama, declaró que el día 3 de julio de 1921 examinó las partes visibles de la instalación de dicho teatro y encontró que puede seguir trabajando en la forma que está, sin peligro alguno, y que si bien el sistema *"Underwriter"* para instalaciones es bueno, en esta isla solamente lo tiene el edificio federal. Lucas Pou, que es electricista, declaró que hizo la instalación para el teatro "Bernardini" y la ha visto el día en que declaraba, la que está buena y no ofrece peligro alguno; que hizo la instalación a dos hilos porque es tan segura como la de tres hilos; que la de tres hilos es más bien para balancear el sistema de distribución de la ciudad pero no es necesario para el edificio.

La prueba del demandado sobre la deficiencia y peligro de la instalación consistió en la declaración de Francisco Moya, superintendente de la luz eléctrica del municipio de Guayama, quien declaró que es empleado de dicho municipio desde el 10 de enero de 1921 y que antes de ser empleado daba funciones de cinematógrafo en ese teatro hasta que se lo exigieron para el comité del Partido Unionista; que desde esa época tiene algunas deficiencias en la instalación; que entonces tuvo bastante cuidado en protegerla lo más posible; que con motivo del contrato que firmó Torres hizo una ligera inspección en el teatro y encontró algunas cosas que no creyó eficientes, que estimó peligrosas hasta cierto punto, y que por eso no ordenó la conexión; que en una comunicación

que el 6 de julio de 1921 envió a Torres le manifestó cuáles eran esas deficiencias y la manera de corregirlas, siendo una de ellas que la instalación debía ser a tres hilos; que la instalación no está hecha de acuerdo con el sistema *"Under-writer"* y que algunas veces ha visto que cuando se funden los fusibles en ese teatro los sustituyen con alambre de cobre o con un centavo, con lo que toda la instalación pierde y viene el recalentamiento de los hilos. Sobre este último extremo declaró el testigo Santiago Baerga que una noche se quemó·el cordón de un *camerino* del teatro.

El breve resumen que acabamos de hacer demuestra claramente que la prueba fué contradictoria en el particular de si la instalación del teatro es peligrosa, conflicto que la corte inferior decidió en contra del demandado, sin que veamos razón alguna para ir contra esa decisión, con mayor motivo cuanto que la preponderancia de la evidencia está indudablemente a favor del peticionario, y por tanto no ofreciendo peligro inminente la instalación no pudo en esto fundarse la negativa para dar corriente eléctrica al peticionario. Además, como no se trata de una instalación nueva no tenía que ser aprobada por el municipio, de acuerdo con la sección 27, antes de recibir la corriente, y si es defectuosa debió, de acuerdo con la sección 28, comunicarse por escrito al consumidor interesado haciendo constar los defectos y modo de corregirlos y señalársele un plazo razonable para corregirlos y vencido el plazo sin que hubiesen sido reparados los defectos entonces hubiera podido ser privado de servicio hasta el cumplimiento de la orden.

Con respecto al dicho de que en ese teatro se usaban al-gunas veces alambre de cobre o centavos cuando los fusibles se fundían, no tenemos necesidad de considerar tal hecho porque no se imputan tales actos al peticionario Torres y más bien se refieren las declaraciones a empresas anteriores.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y Hutchison.

El Juez Presidente Sr. del Toro disintió.

El Juez Asociado Sr. Franco Soto no tomó parte en la vista de este caso.