ANGEL M. YUMET, peticionario y apelado, *v.* WENCESLAO HERRERA, Alcalde del Municipio de Aguadilla, y JOSÉ BADILLO NIEVES, Tesorero-Director Escolar, funcionarios administrativos del Municipio de Aguadilla, demandados y apelantes.

No. 6763.—*Sometido:* Diciembre 3, 1935. *Resuelto:* Diciembre 11, 1935.

*Luis A. Rosario,* abogado de los apelantes; *José Veray, Jr.,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Angel Yumet acude al recurso extraordinario de *mandamus* para obligar a los demandados Wenceslao Herrera y José Badillo Nieves, Alcalde y Tesorero del municipio de Aguadilla, respectivamente, a que le restituyan el servicio de agua que le suspendieron dichos funcionarios en dos casas de su propiedad radicadas en la calle José de Diego de la referida ciudad. Éste es un caso en que no se practicó prueba testifical y en que tanto los demandados como el peticionario han admitido que todos y cada uno de los hechos alegados en la solicitud de *mandamus* y en la contestación han sido suficiente y debidamente probados. Sin embargo, como veremos más adelante, existe un particular en las admisiones de las partes en que se advierte cierto conflicto que a nuestro juicio carece de importancia, porque, a pesar de esta aparente contradicción, los mismos hechos alegados y las conclusiones de la corte inferior facilitan la resolución de la cuestión fundamental que ha dado origen a este litigio.

El municipio de Aguadilla es una corporación municipal organizada, que suministra corriente eléctrica para fines de alumbrado y explota además un sistema de acueducto, cobrando a los consumidores de agua las cuotas que fija la tarifa autorizada por una ordenanza que dicho municipio tiene aprobada intitulada ''Ordenanza para regular las instalaciones y cobro de agua suministrada por el acueducto de Aguadilla''.

La ciudad de Aguadilla está dotada de un sistema de alcantarillado y el municipio tiene aprobada una ordenanza conocida con el nombre de ''Arbitrios Municipales'', que fija ciertos y determinados arbitrios por el uso del alcantarillado.

El peticionario es dueño de dos casas que utilizan servicios municipales de luz, agua y alcantarillado, por las cuales ha venido pagando los servicios de luz y agua, pero no el de alcantarillado. Durante el mes de agosto de 1933 el peticionario se encontraba adeudando los servicios de luz y agua de dichas dos casas, correspondientes a los meses de junio y julio de 1933, y en 16 de agosto de dicho año dirigió una

carta al demandado, Tesorero y Director Escolar de Agua-dilla, incluyendo un cheque pagadero a su orden, contra el Banco Agrícola de dicha ciudad, por la cantidad de $25.87, para satisfacer los servicios de corriente eléctrica y agua en las casas de su propiedad. El Tesorero devolvió este cheque, alegando que no es su norma admitir cheques por concepto de pago y que el peticionario, al verificar su remesa, no lo hace por el concepto que adeuda y que se le está cobrando. En vista de esta negativa, el Tesorero fué· requerido para que aceptase un giro postal por la referida suma. El peticionario comisionó al abogado José Veray para que personal-mente hiciera el pago de los referidos servicios municipales de luz y agua, pero el Tesorero se negó a recibir la cantidad ofrecida, alegando tener orden del Alcalde Municipal Wen-ceslao Herrera de no recibir pago alguno por concepto de suministro de luz y de agua hasta que no fuera pagado el arbitrio de uso de alcantarillado. El peticionario fué privado del servicio de agua en las dos casas de su propiedad por no haber efectuado dicho pago. Así lo declara la corte inferior, al pronunciar su fallo ordenando la restitución del servicio suprimido. "No aparece," dice el tribunal sentenciador, "de las ordenanzas municipales relacionadas con el servicio de agua, luz y alcantarillado, que la falta de pago de este último servicio apareje como sanción la privación del servicio de suministro de agua por parte del municipio."

Apelaron los demandados de la sentencia dictada, atribu-yendo a la corte inferior varios errores que se dirigen a sos-tener que la corte inferior cometió error al no anular el auto de *mandamus,* porque existen otros remedios ordinarios que el peticionario puede utilizar, porque el recurso inter-puesto no procede para ejercitar dominio sobre la discreción de un funcionario, porque no existe un derecho claro para acudir al procedimiento de *mandamus,* porque este auto sólo procede para obligar al cumplimiento de un acto que la ley particularmente ordena como un deber resultante del empleo, y porque tratándose en este caso específico de enforzar un

contrato sobre suministro de agua, no procede el auto de *mandamus* solicitado.

Alegan los apelantes que existen otros remedios or. dinarios que no han sido ejercitados en este caso y señalan la falta de consignación de la cantidad adeudada al municipio. Se arguye que el peticionario ha debido agotar el recurso de la consignación autorizada por el Código Civil como requisito previo al ejercicio de la acción de *mandamus*. No estamos de acuerdo. El Tesorero Municipal se negó a admitir el pago ofrecido por el peticionario en moneda legal de los Estados Unidos, y el municipio suprimió en sus dos casas el servicio de agua, negándose a restituirlo. El peticionario no tiene necesidad de consignar cantidad alguna para ejercitar sus derechos a la restitución del servicio suprimido por medio del procedimiento extraordinario de *mandamus*. El artículo 83 de la Ley Municipal vigente dice que las cortes de distrito tendrán jurisdicción a instancia de parte perjudicada para compeler mediante auto de *mandamus* al cumplimiento de deberes ministeriales por los municipios o. funcionarios municipales.

Esta corte, en el caso de *Torres* v. *Capestani,* 30 D.P.R. 778, interpretando el precepto legal citado, ha declarado que el recurso de *mandamus* es procedente para que un consumidor pueda obtener el suministro de flúido eléctrico que sin razón legal le niega el funcionario municipal encargado de suministrar la corriente.

En el caso de *City of Camilla* v. *Norris,* 67 S.E. 940, se solicitó un auto de *mandamus* para obligar a las autoridades municipales a suplir agua en la residencia del peticionario. Se alegó que la municipalidad había establecido un sistema de acueducto con el cual estaba conectada la residencia del peticionario y que sin causa se suprimió el servicio de agua, a pesar de que el peticionario nada debía y había ofrecido pagar por adelantado el servicio deseado. Se sostuvo que la petición no estaba sujeta a desestimación por el motivo de que el demandante tuviese un remedio legal específico. La

sentencia de la corte inferior concediendo el auto de *mandamus* fué confirmada. Véanse también los casos de *Robbins v. Bangor Ry. & Electric Co.,* 100 Me. 496, 62 A. 136; *Bourke v. Olcott Water Co.,* 84 Vt. 121, 78 Atl. 715; *Independent School Dist.* v. *Le Mars City Water & L. Co.,* 131 Iowa 14, 107 N.W. 944; *Haugen* v. *Albina Light & Water Co.,* 21 Or. 411, 28 P. 244; *Lukrawka* v. *Spring Valley Water Co.,* 169 Cal. 318, 146 P. 640; *Poole* v. *Paris Mountain Co.,* 81 S.C. 438, 62 S.E. 874.

■ Se alega por último que la corte cometió error al apreciar la prueba. El supuesto error parece basarse en haber declarado el tribunal *a quo* que el motivo fundamental de la solicitud de *mandamus* es la privación del servicio de agua al peticionario por no haber pagado el arbitrio que adeudaba por concepto de alcantarillado. Ya dijimos antes que los hechos alegados fueron admitidos y que sólo existe un particular en que se advierte cierto conflicto en las admisiones de las partes. El peticionario alegó que en 18 de agosto de 1933 le fué cortado y suspendido el servicio de agua en las dos casas de su propiedad y que se le privó de este servicio por no haber pagado el arbitrio correspondiente al alcantarillado. Los demandados niegan esta alegación, y alegan que el día 16 de agosto de 1933 fué la fecha en que se le suspendió el servicio de agua al peticionario.

Los demandados aceptaron que todos y cada uno de los hechos establecidos en la petición de *mandamus* habían sido suficiente y debidamente probados por el peticionario, quien a su vez aceptó que los hechos alegados en la contestación habían sido también probados. En el hecho sexto de la contestación se dice lo siguiente con respecto a la referida alegación del peticionario que aparece en el hecho décimotercero de la solicitud:

"Del hecho décimotercero de la solicitud enmendada los demandados niegan por ser falso que el día 18 de agosto, 1933, fuera la fecha en que se le suspendió el servicio de agua al peticionario en las alegadas casas de su propiedad, negando también por falta de

`suficiente información y creencia que una de dichas casas fuéra desocupada inmediatamente debido al acto ilegal de los demandados cortando y suspendiendo el servicio municipal de agua de la misma; y niegan además los demandados que su actitud no se debió única y exclusivamente a la negativa del peticionario de no pagar el arbitrio del alcantarillado; y en contrario a dicho hecho el Tesorero-Director Escolar aquí demandado alega que el día 16 de agosto de 1933 ante la negativa del peticionario a pagar el arbitrio de agua y alcantarillado, ordenó que le fuera suspendido el servicio de agua al peticionario.''

El hecho de que la suspensión del servicio de agua al peticionario se hubiese llevado a cabo el día 16 y no el 18 de agosto carece, a nuestro juicio, de importancia desde el momento en que los propios demandados aceptan que ante la negativa del peticionario a pagar el arbitrio de agua y alcantarillado, se ordenó por el Tesorero la suspensión del servicio de agua. El demandado José Badillo Nieves, Tesorero y Director Escolar del municipio de Aguadilla, alega que su negativa a recibir del peticionario la suma adeudada se debió a su obligación de cumplir al pie de la letra una orden ejecutiva del Alcalde, en la cual se le decía que se abstuviera de recibir dinero alguno por pago adeudado por servicio de agua del acueducto, a menos que se pagasen también los derechos por servicio de alcantarillado. Alega también el referido demandado que se negó a recibir el pago por servicio de agua del peticionario por la razón de que la ordenanza de agua, tal y como está en vigor en la actualidad, dispone que todo abonado que le fuere suspendido el servicio de agua por falta de pago, al hacérsele la reinstalación de la acometida de agua deberá pagar la suma de $1. Se ha demostrado que a pesar de que el peticionario ofreció satisfacer la cantidad que adeudaba por servicio de agua, los demandados insistieron en mantenerlo privado de dicho servicio. No surge de la prueba que la actitud de la municipalidad se deba a que el peticionario dejara de pagar la suma de $1 para la reinstalación del servicio. Como hemos dicho anteriormente, los mismos demandados admiten y alegan que ante la nega-

tiva del peticionario a satisfacer ambos arbitrios, se ordenó por el Tesorero la suspensión del servicio de agua.

Hemos examinado detenidamente las alegaciones y la evidencia aportada y nos parece correcta la apreciación de la corte inferior en cuanto a los hechos alegados y probados. No hay duda de que al peticionario se le suspendió el servicio de agua y se le negó su restitución por no haber satisfecho el importe del servicio del alcantarillado. Como acertadamente ha declarado la corte inferior, no existe disposición alguna que imponga como sanción la privación del servicio de suministro de agua a la persona que no satisfaga el servicio de alcantarillado. Y si, en ausencia de esta disposición, pudiese el municipio privar a una persona del uso del agua para obligarla a pagar el servicio de alcantarillado, también podría valerse de este medio drástico para hacer efectiva cualquier otra obligación a su favor contraída. No concede la ley autoridad al municipio para adoptar una medida tan extrema como la de privar del servicio de agua a una persona, por el hecho de que no haya satisfecho lo que adeuda en otro concepto y por un distinto servicio.

*Debe confirmarse la sentencia apelada.*